UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James R. Marchetti, et al., | Court File No. 13-cv-1978 (PJS/LIB) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| U.S. Bank, N.A., et al., | |
| Defendants. | |

This matter comes before the undersigned United States Magistrate Judge upon Defendant U.S. Bank, N.A.'s Motion for Summary Judgment, [Docket No. 50]; and Defendant Klatt, Odekirk, Augustine, Sayer, Treinen & Rastede, P.C.'s Motion for Summary Judgment, [Docket No. 62]. On August 28, 2013, the Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota, referred all dispositive motions in the present case to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1). (Order of Reference [Docket No. 11]). The Court held a motions hearing on January 22, 2015, and the Court took Defendants' motions for summary judgment under advisement. For reasons discussed herein, the Court recommends **GRANTING** Defendant U.S. Bank, N.A.'s Motion for Summary Judgment, [Docket No. 50]; and **GRANTING** Defendant Klatt, Odekirk, Augustine, Sayer, Treinen & Rastede, P.C.'s Motion for Summary Judgment, [Docket No. 62].

I.     BACKGROUND

   A.     Plaintiffs' Complaint

Plaintiffs James R. Marchetti and Nancy J. Marchetti (collectively, "Plaintiffs") initiated the present action in response to Defendant U.S. Bank, N.A.'s ("U.S. Bank") efforts to foreclose on Plaintiffs' residence, located at 4963 E. Pike Lake Road, Duluth, Minnesota ("the residence").

On or about June 26, 2013, Plaintiffs, proceeding *pro se*, filed a "Complaint for Emergency Injunctive and Declaratory Relief and to Stay Foreclosure Sale" in Minnesota state court, effectively staying the foreclosure sale of Plaintiffs' residence, scheduled to take place on June 27, 2013. (Summons and Compl. [Docket No. 1-1]), at 3). Defendant U.S. Bank removed the action to the United States District Court for the District of Minnesota on July 23, 2013. (Notice of Removal [Docket No. 1]).[1]

In the Complaint, Plaintiffs allege that Defendants[2] initiated a "non-judicial foreclosure" on Plaintiffs' residence on December 15, 2011. (Id. ¶ B1). Plaintiffs filed for bankruptcy one day prior, on December 14, 2011, "to temporarily protect their home from foreclosure after the Mortgagee denied a request for a mortgage modification through the federal HAMP process[.]" (Id.) Since December 2011, Plaintiffs have managed to postpone the foreclosure sale several times, ostensibly to allow Plaintiffs the opportunity to "explore their options." (Id.) Plaintiffs "seek[] to remain in their home, to modify their home mortgage to an affordable rate at the lowest interest rate available." (Id. ¶ B3). Plaintiffs conclusorily allege that the mortgage documents contain false statements and request the Court "void" the loan as predatory. (Id. ¶ B4). Plaintiffs further allege that the mortgage documents do not "meet the minimum requirements of being legally notarized" and, accordingly, were not properly recorded. (Id.)

Plaintiffs generally allege violations of Minn. Stat. § 325F.69, subd. 1 (fraud, misrepresentation, deceptive practices); Minn. Stat. § 58.13, subd 1(a)(9), (18), (24), (25); and Minn. Stat. § 358.42. (Id. at Count I). Plaintiffs request the Court:

1. Declare the mortgage documents void;

---

[1] U.S. Bank properly removed. (See Order Adopting Report and Recommendation Denying Plaintiffs' Motion to Remand [Docket Nos. 25, 27]).

[2] Two Defendants remain in the present case: Defendant U.S. Bank, the mortgagee; and Defendant Klatt, Odekirk, Augustine, Sayer, Treinen & Rastede, P.C. ("Klatt Law"), agent and counsel for U.S. Bank during its foreclosure efforts. (Compl. [Docket No. 1-1], ¶ A2).

2. Require U.S. Bank to provide a "real" contract and "make good on their offer to allow for a loan modification that will be affordable for the Plaintiffs"; and

3. Declare that all "requirements for any bonds" be waived.

(Id. at Count II).

B.    Material Facts[3]

On or about March 16, 2006, Plaintiffs applied for a 30-year, fixed-rate home loan with U.S. Bank. (Gunderson Decl. [Docket No. 55], Ex. A). Plaintiffs did not qualify for the fixed-rate loan for which they originally applied. (Klobucar Decl. [Docket No. 61], Ex. K at 107:2-8). Accordingly, U.S. Bank referred Plaintiffs to a department that handled loans other than traditional 30-year, fixed-rate mortgages, including adjustable-rate notes. (Id. at 107:9-17).

In April 2006, Plaintiffs sent pay stubs, W2s, and other documents regarding their income and investment portfolio to U.S. Bank, accompanied by a letter stating that receiving a loan was important to Plaintiffs because they were seeking additional funds to consolidate their unsecured debt. (Gunderson Decl. [Docket No. 55], Ex. B). Plaintiffs applied for an adjustable-rate loan in the amount of $500,000. (Id. at Ex. C). U.S. Bank approved Plaintiffs for the loan. At his deposition, Plaintiff James Marchetti recognized and admitted that at the time of closing (on April 24, 2006), he understood that by signing the subject mortgage, Plaintiffs intended to grant U.S. Bank an adjustable-rate mortgage on their home in exchange for a loan in the amount of $500,000. (Klobucar Decl. [Docket No. 61], Ex. K at 56:4-20, 58:1-2).

Plaintiff James Marchetti lost his job in 2008, and thereafter, in 2009, Plaintiffs began to fall behind on their mortgage payments. (Wells Decl. [Docket No. 56], Ex. A). In July 2009,

---

[3] The Court derives the material facts from the declarations and documents submitted in support of Defendants' motions for summary judgment. Despite requesting and receiving an extension of time to file a memorandum in opposition to the present motions, [Docket Nos. 50, 62], Plaintiffs did not file any written opposition, declarations, or other documents in response to either of the motions for summary judgment.

U.S. Bank and Plaintiffs entered into an agreement to defer two past due payments to the back of the loan. (Id.) In 2010, U.S. Bank and Plaintiffs again agreed to defer another ten past due payments to the back of the loan. (Id. at Ex. B). Despite the deferments, Plaintiffs could not stay current on the mortgage, and U.S. Bank initiated foreclosure proceedings in October 2011. (Denson Decl. [Docket No. 57], Ex. A).

Also in late 2011, Plaintiffs sought a modification of their mortgage pursuant to the Home Affordable Mortgage Protection (HAMP) program. (Wells Decl. [Docket No. 56], Ex. C). U.S. Bank contacted Plaintiffs and informed them that they would need to submit a completed HAMP application package seven days prior to the scheduled foreclosure sale, scheduled for December 15, 2011. (Id.) Plaintiffs did *not* submit a complete application in time, and U.S. Bank sent a letter informing Plaintiffs of the same on December 13, 2011. (Id.)

On December 14, 2011, Plaintiffs filed for Chapter 7 bankruptcy. (Klobucar Decl. [Docket No. 61], Ex. B). On April 24, 2012, the United States Bankruptcy Court for the District of Minnesota entered an order modifying the automatic stay to allow U.S. Bank to proceed with foreclosure or "any other action to preserve and enforce its rights in accordance with state law, with regard to the property[.]" (Id. at Ex. C).

U.S. Bank rescheduled the foreclosure sale to take place on September 25, 2012. (Denson Decl. [Docket No. 57], Ex. B). The day before the scheduled sale, Plaintiffs filed an affidavit of postponement pursuant to Minn. Stat. § 580.07, postponing the foreclosure sale for five months and, in exchange, reducing their redemption period from six months to five weeks. (Klobucar Decl. [Docket No. 61], Ex. H). U.S. Bank rescheduled the foreclosure sale for March 12, 2013. (Denson Decl. [Docket No. 57], Ex. C).

In February 2013, Plaintiffs again sought modification of their loan. (Wells Decl. [Docket No. 56], Ex. D). Additionally, again on the eve of the scheduled foreclosure sale, on March 11, 2013, Plaintiffs filed for Chapter 13 bankruptcy. (Klobucar Decl. [Docket No. 61], Ex. D). On April 13, 2013, U.S. Bank informed Plaintiffs that they had failed to submit a complete modification application/package and that, as a result, Plaintiffs were ineligible for a loan modification. (Wells Decl. [Docket No. 56], Ex. E).

On April 16, 2013, the bankruptcy court dismissed Plaintiffs' Chapter 13 case for failure to file appropriate schedules and other required documents. (Klobucar Decl. [Docket No. 61], Ex. E). Following, U.S. Bank scheduled the foreclosure sale of Plaintiffs' residence for June 27, 2013. (Denson Decl. [Docket No. 57], Ex. D). Plaintiffs commenced the present action on or about June 26, 2013. U.S. Bank has not proceeded with the foreclosure sale during the pendency of the present case. Despite the fact that the present record before the Court demonstrates that Plaintiffs' loan did not adjust while they were current and making payments and that the payment of principle and interest remained the same throughout the duration of the loan (prior to Plaintiffs' default), Plaintiffs have not made a single payment to U.S. Bank since January 2011. (Klobucar Decl. [Docket No. 61], Ex. G). Plaintiffs continue to occupy the home.

## II.   DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, [DOCKET NOS. 50, 62]

Pursuant to Federal Rule of Civil Procedure 56, Defendants U.S. Bank and Klatt Law separately move the Court for an order entering summary judgment in their favor, as no genuine issue of material fact exists and Defendants are entitled to judgment as a matter of law. (Defendants' Motions for Summary Judgment [Docket Nos. 50, 62]).

### A.   Standard of Review

Summary judgment is appropriate when the evidence demonstrates that no genuine issue

of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). A disputed fact is "material" if it may affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of producing sufficient admissible evidence to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, and the Court must grant the nonmoving party the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). However, the nonmoving party may not rest on mere allegations or denials in their pleadings, but must set forth specific, admissible, evidence-based facts demonstrating the existence of a genuine issue. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

"Naked assertions, unsubstantiated by the record" made in rebuttal do not amount to evidence sufficient to preclude summary judgment. Dutton v. University Healthcare Sys., LLC, 136 Fed. Appx. 596 (5th Cir. 2005) (unpublished decision); see also Simms v. McDowell, 2009 WL 3160353, at *5 (W.D. Ky. Sept. 25, 2009) (holding that speculation that someone lied in an affidavit is "insufficient to defeat a motion for summary judgment"). "A properly supported motion for summary judgment is not defeated by self-serving affidavits." Frevert v. Ford. Motor Co., 614 F.3d 466, 473 (8th Cir. 2010) (quoting Bacon v. Hennepin County Med. Ctr., 550 F.3d 711, 716 (8th Cir. 2008)). "Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Id. at 473-74.

The movant is entitled to summary judgment when the nonmoving party has failed to "establish the existence of an essential element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

"Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

**B.     Analysis**

As articulated in the Background section, supra, Plaintiffs allege violations of Minn. Stat. § 325F.69, subd. 1; Minn. Stat. § 58.13, subd. 1(a)(9), (18), (24), (25); and Minn. Stat. § 358.42. (Compl. [Docket No. 1-1], at Count I).

As a threshold issue, the present record before the Court is entirely devoid of *any* evidence of a causal connection between Plaintiffs' alleged damages and *any* action, conduct, or wrongdoing by either of the Defendants. Plaintiffs conclusorily allege that Defendants committed various statutory violations and/or that the loan itself was predatory and/or fraudulent, but Plaintiffs fail to present *any* evidence that Defendants' alleged wrongdoing *caused* Plaintiffs' alleged damages (namely, damages arising out of and/or attributable to Plaintiffs' default). To the contrary, on the record at the January 22, 2015, motions hearing, Plaintiffs explicitly stated that had Mr. Marchetti *not lost his job* or the anticipated revenue from various investments, Plaintiffs *would have been able to continue making payments on the mortgage*. Plaintiffs explicitly represented that had they continued to receive the income they were receiving at the time they signed the loan documents in April 2006, Plaintiffs would have been able to continue

7

making payments as scheduled and avoided default and inevitable foreclosure. Mr. Marchetti made nearly identical concessions at his deposition, representing that the reason Plaintiffs defaulted on the loan was not because the loan was predatory, inundated with fraudulent misrepresentations, or otherwise improperly issued in April 2006, but because "[Mr. Marchetti] didn't have the income to support paying these monthly payments on this mortgage[.]" (Klobucar Decl. [Docket No. 61], Ex. K at 117:12-15). Mr. Marchetti conceded that "[a]t the time we received this loan (indicating), it was okay, I agree with you[,]" (id. at 130:17-18), and that the Plaintiffs ultimately defaulted as a result of eventual "job loss due to job cuts through the economy, through everything else that was falling apart, caused employment loss, caused our investments to drop by 60 percent, and we could no longer afford this loan." (Id. at 131:24-132:3).

The present record before the Court is entirely devoid of any evidence of a causal connection between Plaintiffs' alleged damages and any action or conduct by Defendants. To the contrary, the evidence before the Court unequivocally demonstrates that circumstances and events *other than Defendants' conduct or the terms of the mortgage itself* are to "blame" for Plaintiffs' alleged damages. For this reason alone, the Court could recommend entering summary judgment in Defendants' favor. See generally Sovis v. Bank of New York Mellon, No. 11-cv-2253 (DWF/LIB), 2012 WL 733758, at *4-5 (D. Minn. Mar. 6, 2012) (finding that general allegations that defendants unlawfully foreclosed on plaintiff's home pursuant to a series of invalid assignments of mortgage "cannot furnish the causal nexus necessary to establish standing to assert her claims") (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992) ("[T]here must be a causal connection between the injury and the conduct complained of," and it must be likely "that the injury will be redressed by a favorable

decision.")). However, in the interests of complete judicial review, the Court explores each of Plaintiffs' statutory claims in further detail.[4]

### 1. Consumer Fraud Claim: Minn. Stat. § 325F.69

Plaintiffs generally allege that Defendants (specifically, U.S. Bank) are guilty of fraud, misrepresentation, and deceptive practices in violation of Minn. Stat. § 325F.69, subd. 1. (Compl. [Docket No. 1-1], at Count I.A.). Plaintiffs conclusorily allege that "[t]he Mortgagee and Loan Closer both engaged in deceptive practices in connection with the 'Merchandise' that significantly harmed the Plaintiffs. The Plaintiffs were not made aware in writing of the type of loan or ARM that was presented until the time of closing." (Id.) Plaintiffs' claim pursuant to Minn. Stat. § 325F.69 necessarily fails because the present record before the Court indicates that Plaintiffs cannot establish the existence of an element essential to the claim, namely, a "public benefit."

> Subdivision 1 of Minn. Stat. § 325F.69 provides,
>
>> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

Section 325F.69 "do[es] not provide for a private cause of action, but the Minnesota Private Attorney General Statute provides a private civil remedy for persons injured by [this] and other statutes if they can show a *public benefit*." Klinge v. Gem Shopping Network, Inc., No. 12-cv-2392 (JNE/SER), 2014 WL 7409580, at *2 (D. Minn. Dec. 31, 2014) (citing Minn. Stat. § 8.31, subd. 3(a); Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn. 2000)) (emphasis added). "Because a

---

[4] The Court notes that at the January 22, 2015, motions hearing, Plaintiffs explicitly clarified that the Complaint alleges the statutory claims against U.S. Bank only; Plaintiffs exclusively argue that Klatt Law erred in relying on "improperly notarized documents" when initiating foreclosure proceedings.

private plaintiff's authority derives from the Attorney General's enforcement authority, the Minnesota Supreme Court has held it applies only to those who 'demonstrate that their cause of action benefits the public.'" Kinetic Co. v. Medtronic, Inc., 672 F. Supp. 2d 933, 945 (D. Minn. 2009) (quoting Ly, 615 N.W.2d at 314; Anderson-Johanningmeier v. Mid-Minnesota Women's Center, Inc., 637 N.W.2d 270, 276-77 (Minn. 2002)). In other words, to survive summary judgment on a claim pursuant to Minn. Stat. § 325F.69, a plaintiff must demonstrate and submit sufficient probative evidence of a genuine dispute of material fact as to the existence of a public interest.

The issue of whether a claim serves the public interest is a question of law, not a question of fact. Bartol v. ACC Capital Holding Corp., No. 09-cv-2718 (DWF/JSM), 2010 WL 156448, at *6 (D. Minn. Jan. 11, 2010). In the present case, as in Bartol and Ly, supra, Plaintiffs' claims concern only a one-on-one mortgage transaction, and in Bartol and Ly, the courts recognized that such one-on-one mortgage claims do *not* benefit or otherwise interest the public. Additionally, this District has previously noted that "the benefit of generally preventing foreclosure abuse is too remote to satisfy the 'public benefit' requirement." Bartol, 2010 WL 156448, at *6 (dismissing the plaintiff's Minn. Stat. § 325F.69 claim in response to a motion to dismiss because the plaintiff failed to demonstrate that the prosecution of her claim would benefit the public).

"To determine whether a lawsuit is brought for the public benefit the Court must examine not only the form of the alleged misrepresentation, but also the relief sought by the plaintiff." Zutz v. Case Corp., No. 02-cv-1776 (PAM/RLE), 2003 WL 22848943, at *4 (D. Minn. Nov. 21, 2003). Where the recovery sought is for the exclusive benefit of the plaintiff, no *public* benefit exists. Id. In the present case, Plaintiffs have offered no evidence into the record that their claims

benefit the public. In fact, Plaintiffs explicitly and exclusively seek *personal* damages specifically related to their mortgage. (See Klobucar Decl. [Docket No. 61], Ex. J).

For the foregoing reason, Plaintiffs' claim pursuant to Minn. Stat. § 325F.69 fails as a matter of law, and Defendants are entitled to summary judgment.

### 2. Minnesota Residential Mortgage Act Claims: Minn. Stat. § 58.13

Second, Plaintiffs conclusorily allege violations of "Standards of Conduct," in violation of Minn. Stat. § 58.13. (Compl. [Docket No. 1-1], at Count I.B.). In support of their claim pursuant to Minn. Stat. § 58.13, Plaintiffs merely *quote* subdivision 1(a), subparts (9), (18), (24), and (25). (Id.) Plaintiffs fail to allege (much less offer evidence of) any specific facts in support of their claim pursuant to Minn. Stat. § 58.13, aside from a conclusory allegation that a letter estimating Plaintiffs' expected earned interest from certain investments "was not accurate or truthful as to the interest being realized and produced by the investments." (Id.) Plaintiffs have offered *no* admissible evidence into the record in opposition to the present motions for summary judgment.

Defendant U.S. Bank argues that the National Bank Act preempts the Minnesota Residential Mortgage Act and that, as a result, Plaintiffs' claims pursuant to Minn. Stat. § 58.13 necessarily fail.[5] However, even if the National Bank Act did not unequivocally preempt Plaintiffs' claim pursuant to Minn. Stat. § 58.13, Plaintiffs again fail to demonstrate a public benefit. See Section II.B.1, supra. Akin to claims alleged pursuant to Minn. Stat. § 325F.69, "a violation of Minn. Stat. § 58.13 alleged by an individual must be brought pursuant to the private

---

[5] "The National Bank Act is one of only three 'classes of cases' where the Supreme Court has found complete preemption." Bohnhoff v. Wells Fargo Bank, N.A., 853 F. Supp. 2d 849, 858 (D. Minn. 2012) (citing Firstcom, Inc. v. Qwest Corp., 555 F.3d 669, 677 n.6 (8th Cir. 2009)). This District has previously held that the National Bank Act necessarily preempts the Minnesota Residential Mortgage Act, finding that the Minnesota Residential Mortgage Act "regulates what a lender may represent in connection with a residential loan transaction." Bohnhoff, 853 F. Supp. 2d. at 858 (finding plaintiff's claims pursuant to Minn. Stat. § 58.13 preempted and granting defendant's motion to dismiss). For this reason alone, the Court could recommend finding that Plaintiffs' claim against Defendant U.S. Bank pursuant to Minn. Stat. § 58.13 necessarily fails.

attorney general statute[.]" <u>Christensen v. PennyMac Loan Servs., LLC</u>, 988 F. Supp. 2d 1036, 1045 (D. Minn. 2013). For reasons discussed in the previous section, Plaintiffs have not pled nor demonstrated by admissible evidence that a public interest exists, and Plaintiffs' claims pursuant to Minn. Stat. § 58.13 necessarily fail as a matter of law.

Beyond the above-described, independent bases for granting both Defendants summary judgment on Plaintiffs' Minn. Stat. § 58.13 claims, Plaintiffs fail to plead or offer any admissible evidence sufficient to demonstrate or create a genuine dispute of material fact regarding any claim of fraud and/or misrepresentation. "Allegations of false, deceptive, or misleading statements under Minn. Stat. § 58.13, subd. 1(a)(9) are considered to be allegations of fraud and must be pled with particularity under Federal Rule of Civil Procedure 9(b)." <u>Christensen</u>, 988 F. Supp. 2d at 1045 (<u>citing</u> <u>Doran v. Selene Fin., LP</u>, No. 12-cv-886 (SRN/FLN), 2013 WL 53840, at *4 (D. Minn. Jan. 3, 2013) (<u>citing</u>, in turn, <u>Weller v. Accredited Home Lenders, Inc.</u>, No. 08-cv-2798 (JRT/SRN), 2009 WL 928522, at *6 (D. Minn. Mar. 31, 2009))). To satisfy Rule 9's heightened pleading standard, Plaintiffs must set forth the "who, what, when, where, and how" of an alleged misrepresentation. <u>Christensen</u>, 988 F. Supp. 2d at 1045. Plaintiffs fail to offer or point to any admissible evidence in the record sufficient to demonstrate or support Plaintiffs' conclusory allegations of fraud with the requisite particularly, and, as a result, Plaintiffs' general fraud/misrepresentation claims necessarily fail.

### 3. Notary and/or Recording Violation: Minn. Stat. § 358.42

Finally, Plaintiffs allege that the closing agent "violated all aspects" of Minn. Stat. § 358.42. (Compl. [Docket No. 1-1], at Count I.C., I.D.). More specifically, Plaintiffs allege that "[t]he Notary Officer that signed the mortgage documents was not present during the closing and did not witness any signatures made." (<u>Id.</u>) At the hearing, Plaintiffs only offered conclusory

statements – no admissible evidence – to the effect that the loan documents "were not perfected." Plaintiffs explicitly conceded that they do not challenge their signatures on the loan documents nor the substance or terms of the documents.

Even assuming that Plaintiffs' mere allegations in the Complaint regarding the notary officer are true, Plaintiffs fail to connect the allegation to any of Plaintiffs' claimed damages or any specific wrongdoing sufficient to void the subject mortgage. In Tyus v. OWB REO, LLC, directly analogous to the facts pled in the present case, the plaintiff claimed that no notary was present at the closing, and, as a result, the plaintiff sought to void the notary stamp, render the mortgage itself null and void, and have the impending foreclosure declared invalid. Tyus v. OWB REO, LLC, No. 11-cv-1773 (PJS/AJB), 2011 WL 6101919, at *4 (D. Minn. Oct. 25, 2011), report and recommendation adopted, No. 11-cv-1773 (PJS/AJB), 2011 WL 5854706 (D. Minn. Nov. 21, 2011). The court ultimately held that the alleged notary defect did not affect the enforceability of the mortgage:

> In any case where an instrument affecting the title to real estate . . . was heretofore or is hereafter filed for record and recorded . . . and there is apparent on the face of the instrument or the record thereof a defect in the attestation of the instrument . . . the instrument and the filing and record thereof . . . shall have the same force and effect as constructive notice and the same force and effect as evidence and **the same force and effect for all purposes that they would have had if no such defect or omission in attestation [existed].**

Id. at *4 (quoting Minn. Stat. § 507.251, subd. 1) (emphasis in original). The court in Tyus held that even assuming the notary attestation was indeed somehow false, as pled, the mortgage documents "in their force and effect" were unaltered, and plaintiff could not rely on the defective notary attestation in support of his claims. Id.

Analogously, in the present case, Plaintiff James Marchetti has testified that it is his understanding as of the time of closing that the mortgage documents were *unaltered* by the fact that the notary officer that actually signed the mortgage documents was alleged to not be present at the closing. Plaintiff's own deposition testimony admits – and the present record before the Court demonstrates – that the allegedly improper notarization of the mortgage documents did not materially alter the terms of the note and mortgage, agreements into which Plaintiffs acknowledge they willingly and intentionally entered. (Klobucar Decl. [Docket No. 61], Ex. K at 89:1-24, 32:19-33:16, 56:4-20). Plaintiffs' notary allegations are insufficient to grant Plaintiffs' their requested relief, and, accordingly, both Defendants are entitled to judgment as a matter of law with respect to Plaintiffs' Minn. Stat. § 358.42 claim.

### 4. Miscellaneous Allegations

As one final matter, construing Plaintiffs' *pro se* Complaint for Emergency Injunctive and Declaratory Relief and to Stay Foreclosure Sale liberally, as the Court is called upon to do, it is possible, by the thinnest thread, to construe Plaintiffs' Complaint as alleging a common law fraud/misrepresentation claim. Regardless, Plaintiffs fail to plead or submit any admissible evidence to support or demonstrate any common law fraud claims with sufficient and requisite particularity to survive summary judgment.

To survive summary judgment on a common law fraud/intentional misrepresentation claim, the evidence must demonstrate that (1) Defendants made a false representation about a past or present material fact that was susceptible of knowledge; (2) Defendants knew the representation was false or asserted it as its own knowledge without knowing whether it was true or false; (3) Defendants intended to induce Plaintiffs to act and that Plaintiffs were induced to

14

act; and (4) that Plaintiffs acted in reliance on the representation and were damaged. Bartol, 2010 WL 156448, at *3 (citing M.H. v. Caritas Family Servs., 488 N.W.2d 282, 289 (Minn. 1992)).

Plaintiffs' alleged misrepresentations appear to be threefold: (1) that U.S. Bank failed to inform Plaintiffs that their loan was an adjustable-rate loan prior to closing; (2) that the closer who appeared at their home was not the person who notarized the mortgage documents; and (3) that an August 4, 2005, letter from U.S. Bank's Trust Department containing an estimate of Plaintiff's annual income from certain investments with U.S. Bank was somehow untruthful. The first "misrepresentation" is refuted by Plaintiff's deposition testimony and the record before the Court; and the second and third fail to allege or demonstrate a specific misrepresentation of material *fact*.[6]

As articulated above, Plaintiffs *admit* that the mortgage documents they voluntarily and intentionally signed accurately reflect their intention to give Defendant U.S. Bank a mortgage on their home in exchange for a loan of $500,000. Plaintiffs *admit* that the mortgage documents (even if notarized at a later date) were unaltered between closing and recording. Finally, Plaintiffs *admit* that income projections on their investment portfolio made around the time of their loan application/approval process were *estimates* as opposed to a *guarantee*, and that the 2008 financial crisis and Mr. Marchetti's job loss were the precipitating cause of Plaintiffs' default.

The present record before the Court indicates that no genuine dispute of material fact exists and that Defendants are entitled to judgment as a matter of law.[7]

---

[6] Specifically with respect to the August 4, 2005, letter, Plaintiff James Marchetti admitted that the letter constituted an *estimate* and not a *guarantee*. (Klobucar Decl. [Docket No. 61], Ex. K at 29:17-20, 30:2-6, 29:11-16). As for the allegation regarding a defect in the notarization of the loan documents, see Section II.B.3, supra.

[7] Finally, the Court notes that generally speaking, Plaintiffs cannot sustain any colorable claim against Klatt Law simply as a result of its involvement as the law firm involved in the foreclosure proceedings. See Karnatcheva v. JPMorgan Chase Bank, N.A., 871 F. Supp. 2d 834, 839 (D. Minn. 2012) aff'd, 704 F.3d 545 (8th Cir. 2013) (citing Welk v. GMAC Mortg., LLC, 850 F. Supp. 2d 976, 995-96 (D. Minn. 2012) (finding law firm was fraudulently

**III. CONCLUSION**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED:**

1. That Defendant U.S. Bank, N.A.'s Motion for Summary Judgment, [Docket No. 50], be **GRANTED**; and

2. That Defendant Klatt, Odekirk, Augustine, Sayer, Treinen & Rastede, P.C.'s Motion for Summary Judgment, [Docket No. 62], be **GRANTED**.

Dated: February 19, 2015                    s/Leo I. Brisbois
                                            Leo I. Brisbois
                                            U.S. MAGISTRATE JUDGE


**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by March 5, 2015**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by March 19, 2015**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.

---

joined because claims against it were frivolous); Jerde v. JPMorgan Chase Bank, N.A., No. 11-cv-2666, 2012 WL 206271, at *2 (D. Minn. Jan. 24, 2012) (finding that law firms are generally immune from actions taken with the scope of their representation absent evidence the law firm took active steps to conceal a fraud, and that Plaintiffs had failed to state a claim against the law firm based on allegations that mortgagee failed to hold an interest in the promissory note); Murphy v. Aurora Loan Servs., LLC, No. 11-cv-2750, 2012 WL 104543, at *4 (D. Minn. Jan. 12, 2012) (finding law firm was fraudulently joined as it was immune from suit and because claims were premised on a flawed legal theory)).